All right, number 161875 Otis v. Demarse or Demarse as it might be and Ms. Rice. Good morning your honors and may it please the court. Good morning. When Ms. Otis repeatedly told the officer what should have been obvious, that she was bleeding badly and needed to go to the hospital. Despite her requests, Ms. Otis was detained for 12 hours and provided no medical assistance. Let me ask you something. Should this case have been brought under the fourth amendment rather than the 14th amendment since Otis was arrested without a warrant? I think the claim the district court properly construed here is a 1983 claim asserting deliberate indifference to a medical condition, which is traditionally for pretrial detainees considered under the 14th amendment. I think that's the proper way to think about it, though I'm certainly open to other ways of doing so. And so for purposes of the 14th amendment and a deliberate indifference claim, Ms. Otis needed to allege two things. An objectively serious medical need and that the relevant official displayed in deliberate indifference to that medical need. Here, Ms. Otis alleged multiple times that she was bleeding badly and that she told the officer as much and in addition that it was visible to the officer and that she was provided no medical assistance. The district court I think correctly determined that that was sufficient to state a claim for deliberate indifference. And the fact that Ms. Otis subsequently submitted a police report that contained a different version of events shouldn't have changed that for a couple reasons. First and most important, this is at the very threshold stage of litigation. This is the IFP screening stage and the allegations in Ms. Otis's complaint should control. But actually, even if the court were to go beyond her allegations, there's actually more in the record here to support them. First, Ms. Otis submitted records from the hospital that the officer allegedly took her to. And those records don't show any visit on the date in question. So that's at least one thing. Are they records from a hospital? Do we know that's what they are? They appear to be. I mean, I think that that's a good question, Judge Ripple, and another reason why we don't need to get this far at this stage. The officer hasn't even answered yet. But the documents Ms. Otis submitted appear to include a letter from her public defender to the hospital with a release form signed by Ms. Otis, requesting the records, any records related to her at that hospital. So it's a fair question whether what we have in the record is. And what do those records, no matter what their source might be, what do they say? So we're talking about it's on page 6 of the appendix. It's a list of visits at this particular hospital, and they cover various dates, and none of those dates are September 17th, which is the date in question. So she was treated there for something on some other day. Yes, exactly. Do we know what she was treated for on those other days? I think various things. There are actually multiple medical records in the record here. She had some back issues. She had a chronic bleeding disorder, which is further evidence, I think, for her claims here. But across a period of years, including just two days after her release from this incident. Was she admitted at that time? She was. She was not admitted at the same hospital. So this appears on appendix 17 through 23. It's a different hospital, and it's a September 19th visit. And those records show that she presented herself at the hospital with bleeding and was given a blood transfusion and found to be a serious risk of further bleeding and death. She was kept overnight and discharged the next day. Now, the court construed Ms. Otis' letter to it as a second amended complaint. Did the district court then assume that she was omitting Officer DeMarce from the complaint rather than adding new defendants? I don't think so. I think the district court's opinion can fairly be read to say that the allegations in the second amended complaint are not sufficient to state a claim against the city and the county. But the court then went on to address the allegations in the amended complaint against the officer and explained why, in the court's opinion, the police report undercut those allegations, such that they didn't state a claim. But I don't think the district court here deemed dispositive that she'd submitted these new documents. But I think for good reason. It's pretty clear what Ms. Otis was trying to do here. She said, quote, I would like to submit the paperwork to add the city and county. And she referred back to her prior allegations. I think it's difficult to read her submission as in any way intending to supersede the prior submission. I understand you think that's difficult, but that does seem to be the way the district judge read it. I'm not sure. The district court could have simply said she submitted a new complaint, end of story. And it didn't do that. It went on to address the claim and the allegations in her amended complaint. But if Your Honor believes that that's what the district court did respectfully, I think it was improper. She's a pro se litigant. I think it's pretty clear what she was trying to do. And in any event, if there was something improper about what she did, I think the proper remedy would have simply been to deny her leave to amend. Ordinarily, when a party seeks leave to amend a complaint and leave to amend is denied, that doesn't mean that the original complaint just evaporates. They're just not permitted to file the new documents. So I think it would be strange, particularly given that she was proceeding pro se. Now, your client submitted these reports, but she also said she never went to the hospital on the night in question. Am I right? She said she never went to the hospital on the night in question. That's correct. But she doesn't deny that somebody tested her for something. She says she was drug tested, yes. So as far as she's concerned, that wasn't done at a hospital? Right. Her allegation is pretty clear on this point. She says it multiple times. And what does the record say with respect to the people who tested her? Who were they? What was their occupation? So it's unclear. There's a form in the record that contains it. It's a sort of blood sample request form. And it's signed by an individual named Ted Zervik. He checked a box that says medical technician. There were other boxes for RN or physician or person acting under the direction of a physician. And those weren't checked. It just says medical technician. It doesn't say where the sample was collected. And we don't really know anything about it. It doesn't say where, does it? No, it does not. And we don't know anything else about who this individual was and where he came from. So on the record as it stands now, it's entirely possible that she was tested. She thought she was not at a hospital. She may have been. The fact of the matter is she wasn't treated for her ailment. So if you're asking is it possible that she was at a hospital, it's possible that later in the litigation the defendants could come forward with evidence showing that that's the case. But if they did, there's still no evidence that she was treated for her disorder. Yes, that's correct. And she was in custody during that period. Yes, that's correct. And this court has previously recognized that the fact that some medical treatment was provided doesn't necessarily mean you can't proceed on a deliberate indifference. So it is entirely possible on the record as it stands now that this lady was brought to a hospital by a police officer, checked to see if she was under the influence, and sent to jail, but was never treated for the underlying uterine bleeding that was causing such a problem for her. Yes, Judge Ripple, that's correct. That may well have happened. That's the state of the record as it is now. Yes. And I think Perez from this court is the best case that some medical care doesn't automatically defeat a claim like this. So even if she was taken to the hospital and drug tested, that doesn't count as treatment for the kind of severe uterine bleeding she was experiencing at the time. You're in your rebuttal. I'll reserve the remainder of my time, please. All right. Ms. Smith? Good morning. Good morning. May it please the Court. The District Court properly dismissed this claim under 28 U.S.C. Section 1915, which requires courts to examine complaints to determine whether they state a claim that is plausible on its face. If we take Ms. Otis' statement of the facts as true, as we must, didn't Officer DeMarce have notice of her serious medical need but yet fail to get her treatment? Your Honor, I'd agree that the officer did have notice that the plaintiff was bleeding. However, in order for her to have a claim here, she has to show that her need was objectively serious and that the official would have known the risk of not providing treatment. I think what's important about the documents that she attached to her complaint is that they show why she was bleeding. Given the reasons for her bleeding, I don't know that an officer would have known that that was something that was objectively serious and that needed medical care at the time. And the officer is entitled to make that kind of diagnosis? Please, dripping with blood. I think this situation where this is related to uterine bleeding is a little different than where someone has a cut or something that you would typically go to the hospital for. She ended up in the ICU 72 hours later. She ended up in the ICU 72 hours later. Yes, that's correct. I'm not trying to argue that she doesn't have a serious condition, but I don't know that the officer was on notice of that serious condition at the time. How much more notice would you need than all this blood pouring out of her?  When, in the context of the reason why she was bleeding, the officer believed that she was on her menstrual cycle, which is typically not something you go to the hospital for. But she was dissuading him of that fact. According to what the plaintiff is alleging in her handwritten complaint, that she did not ask to go to the hospital, but that is contradicted by the documents that the plaintiff herself attached to her complaint. I believe that those documents should be considered because, under the federal rule of civil procedure, 10C, any written documents that are attached to a complaint are part of that complaint for all purposes. So what happens if you attach a complaint to your complaint, a contract that the defendant is asserting against you, and you say, my signature was forged on that? Do we treat that as adopted by the plaintiff by attaching it to her complaint? I think there are a couple of different things here. I understand that the plaintiff is alleging that the defendant lied in this case, but I don't think the authenticity of the reports is necessarily at issue. It's not. I'm just trying to ask you whether you think attaching a document to a complaint, particularly in this post-Iqbal world where plaintiffs have to provide a lot of factual detail, amounts to endorsement of every factual assertion in those documents. No. Okay. And by the way, can we go back to this question about notice? I thought your position was that the police report was correct and that the officer realized it was serious and took her to the hospital. Now you seem to be telling us she didn't know it was serious. What did I misunderstand? I believe that she was taken to the hospital, per the police reports, and not just the police reports, but her own admissions that she had her blood drawn, that she interacted with a medical technician, and that she was given scrubs. It's implausible that those things would have occurred outside of the hospital. On top of that, I don't believe that the information that she attached to her complaints shows that the issue she was having required serious medical care at the time. I understand that a few days later she was admitted, but at the time, as the officers understood it, she was having menstrual bleeding, which arguably is not an objectively serious issue that requires immediate medical care. Ms. Smith, I'm looking at the records right now, and I want to make sure we're talking about the same thing, and your sister referred to it as well. What is the piece of paper that was generated that night with respect to the drug testing that was done that night? There is a state of Wisconsin blood and urine analysis form. It's page 21, I believe, in the district court docket 9-2, and it's signed by, or it's filled out, you know, with the name of the officer and the name of the person whose blood is being drawn, and then it's signed by a medical technician. And no indication it was done at the hospital? I don't believe it states that it was done at the hospital, correct. It does say that she presented to the emergency room with a near... Is that the one? No, that sounds to me like... What night, what was the date on that, the offense? I'm sorry? What was the date of the offense? September... 19. 17, I believe. Yeah. The document on the 19th refers to an emergency room. She did go to the emergency room a couple days later, that might be that time. No, but I'm trying to find the document from the night she was arrested. Okay, page 21 in the district court docket 9-2. And that would have been dated September 17, 2014. And that is where in the appendix that she gave us? That is not in the appendix. It's in the docket. Okay, I don't mean to hold you up, we'll find it here someplace. Go ahead, please. Thank you. As this court noted in previous argument, you could uphold the district court's dismissal of the plaintiff's second amended complaint because it superseded her prior complaint and it is undisputed that her second amended complaint failed to state a claim. It's well established that amended pleadings supersede prior pleadings. Although the district court found that her first amended complaint did state a claim against Officer DeMarce, the second amended complaint superseded that prior complaint and the prior complaint cannot be used to cure defects. The second amended complaint was a pro se letter. Yes. This would be extraordinary. And it was stricken too, right? Second amended complaint. If we're going to be hyper technical about this with this pro se plaintiff, if the second amended complaint, that is the letter with the documents attached, was stricken, that would seem to return us to the first amended complaint which the judge thought stated a claim. I believe that the judge addressed that in his argument, which is why after on the first page of his order where he says that the second amended complaint supersedes the first amended complaint, he went on to discuss how the documents that she provided with her second amended complaint made the first amended complaint implausible. But that's only if we believe the police report, right? I don't believe so. As the court points out, again, the plaintiff admits that she had her blood drawn, that she was wearing scrubs to wear. Where did that happen? It seems implausible that it would have happened outside of a medical setting. Seems implausible sounds like you want us to do some fact finding. I think there has to be some thought given to whether the claim is plausible. Even under liberal pleading standards, the plaintiff still has to state a claim that is plausible on its face. Don't we have such competing facts here? We have nothing from the hospital, not a record. Isn't that odd? I don't think it's odd at this stage where we weren't in the case yet and the plaintiff, you know, it's not clear why she submitted what she submitted. I think it's also odd that she would submit police reports that contradicted what she's trying to claim. Isn't it entirely possible that this woman was taken by the police officer to an ER to be trusted for drugs? If this woman didn't recognize it as an ER, she was trusted for drugs in custody. Nobody addressed her complaint, and she ended up in jail. She said she didn't go to the hospital. To her, going to the hospital was getting treated. She wasn't treated. She was in custody all that night. So the officer had an obligation to take care of her and didn't. That's her point. It is possible that she may have gone to the hospital and not been treated. And there's a difference between normal menstrual bleeding and uterine bleeding that usually comes at that time but is a very different medical condition. That is true. And we know now that she suffered from that. It was triggered by her period. But the fact of the matter is that she has a history of this, and 72 hours later it almost killed her. I don't believe that information was available to the officer at the time. But isn't that why the officer should have done something more than the officer did? Because the information wasn't available. I don't believe that information was even offered to her at the time. I think what she was saying was that she was on her period, and I'm not sure how the officer would know that that was something that needed immediate medical care. Thank you. Two minutes. Ms. Rice, I hate to eat into your two minutes, but I'm flipping through the whole appendix that you gave me here, and I'm looking for that one piece of paper, and that is the piece of paper that tells me what happened the night she was picked up. So as my friend said, that's in the district court docket. It's at 9-2 at page 25. It's not in your appendix. It's not in the appendix. It's crucial to the case. I'm not sure it is, Judge Ripple, but it's available. I'm happy to provide you with a copy after argument. We can get a hold of it. If you're going to give me an appendix, tell me what happened that night. I apologize. To clarify on the dates, the incident in question was September 17th in the very early morning. There are a couple of records that say September 16th. It was about 1 a.m., so I think that that's the source of the confusion. Is it the 19th when she went into the hospital? The 19th is when she was admitted to the hospital subsequently. Yeah, that's right. So, Judge Hamilton, as you said, I think the officer here is asking you to do fact-finding in her favor in several respects. They're asking you to credit the officer's account over the plaintiff's. They're asking you to conclude that the officer didn't reasonably understand Ms. Otis to have a serious medical condition when she was admitted to the ICU two days later. They're asking you to believe that it's implausible that her blood could have been drawn at the station. And then, finally, as you say, Judge Ripple, it's entirely possible that she was taken to the hospital and that she still did not receive the medical treatment that she needed. I guess, finally, Judge Hamilton, to address your question about documents incorporated into the record, I think this court in the Northern Indiana gun case is pretty clear that if you rely on a document, such as in a contract case, then the document that you attach will control. If you're saying that this document entitles you to certain relief, then it's certainly reasonable for the district court to look at that document. But in this case where the plaintiff's claim has nothing to do with the documents, and, in fact, the plaintiff makes clear that she's not adopting them for the truth of their contents, it's not reasonable to rely on that here. Thank you. We respectfully request that you reverse the decision below and remand for further proceedings. Well, two things. Number one, the case will be taken under advisement. Number two, Ms. Rice, you and your firm were appointed by the court, and we thank you very much for your fine representation of your client. And we thank you as well, of course. And we're going to take a short break and come right back.